# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ROBERT F. DURNAN, : 
GERALD R. CHRISTIAN, and : 
MARK C. FORBES : 
 : 
    Plaintiffs, : 
 : 
v. :   C.A. No. 14-470-LPS
 : 
STATE OF DELAWARE; : 
DEPARTMENT OF JUSTICE; : 
JOSEPH R. BIDEN, III, : 
in his individual capacity; and : 
TIMOTHY MULLANEY, : 
in his individual capacity : 
 : 
    Defendants. :

---

G. Kevin Fasic, Katherine Randolph Witherspoon, Cooch and Taylor, P.A., Wilmington, DE

    Attorneys for Plaintiffs.

Kevin R. Slattery, Oliver J. Cleary, Department of Justice, Wilmington, DE

    Attorneys for Defendants.

---

**MEMORANDUM OPINION**

March 24, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

Plaintiffs Robert F. Durnan ("Durnan"), Gerald R. Christian ("Christian"), and Mark C. Forbes ("Forbes" and, collectively, with Durnan and Christian, "Plaintiffs") filed suit against Defendants the State of Delaware; the Delaware Department of Justice ("DDOJ"), Joseph R. Biden, III ("Biden"), and Timothy Mullaney, in his individual capacity ("Mullaney" and, collectively, with the State of Delaware, DDOJ, and Biden, "Defendants") on April 15, 2014. (D.I. 1) On June 17, 2014, Plaintiffs filed an amended complaint ("Amended Complaint"), alleging violations of the Fair Labor Standards Act ("FLSA") and procedural due process. (D.I. 6)

Pending before the Court are Defendant DDOJ's motion for summary judgment (D.I. 67) and Defendant Mullaney's motion for summary judgment (D.I. 70) ("Motions"). For the reasons set forth below, the Court will grant both Motions.

## I. BACKGROUND

Plaintiffs were appointed as State Detectives and were employees of Defendant DDOJ's extradition unit from the late 1990s until November 2013. (See D.I. 6 ¶¶ 10, 16; D.I. 82 at 2) Defendant DDOJ "is an agency of the State of Delaware under the supervision, direction, and control of the Attorney General," and Defendants Biden[1] and Mullaney were the Attorney General and Deputy Attorney General, respectively, during all events that gave rise to the instant litigation. (D.I. 68 at 2)

As State Detectives, Plaintiffs were primarily responsible for "transport[ing] fugitive

---

[1]Defendant Biden passed away "on May 30, 2015, prior to the commencement of discovery in this litigation." (D.I. 68 at 2; see also D.I. 45 at 1)

1

criminal defendants from various locations throughout the United States back to Delaware." (*Id.*) As such, Plaintiffs' job duties "required . . . Plaintiffs to accrue overtime hours due to the travel involved and overnight stays in various locations." (*Id.*; *see also* D.I. 6 ¶ 18) Pursuant to the DDOJ's Policy Manual, and in particular Policy 3.6, DDOJ was required to compensate "overtime hours worked in excess of 37.5 hours per week . . . at a rate of 1.5 compensatory hours per overtime hour." (D.I. 68 at 2-3) Moreover, pursuant to the FLSA, members of law enforcement – including Plaintiffs – "may accrue up to a total of 480 hours of compensatory time before overtime hours must be paid." (*Id.* at 3; *see also* D.I. 82 at 2) DDOJ has "acknowledged its responsibility to pay [State Detectives] compensatory time up to a cap of 480 accrued hours," in accordance with the FLSA and "the Agreement [("CBA")] between [DDOJ] and the Delaware Attorney General's Investigators Association[,] of which Plaintiffs are members." (D.I. 6 ¶ 20)

Plaintiffs' claims arise out of DDOJ's compensation and overtime policies. Specifically, Plaintiffs allege that they "did not receive any overtime compensation for their work as State Detectives" from November 1, 2010 through November 1, 2013.[2] (*Id.* ¶ 25; *see also* D.I. 68 at 3) Plaintiffs "further allege [that] they were retaliated against by . . . DDOJ when they informed . . . Mullaney of their intent to initiate the present civil action in November . . . 2013" (D.I. 68 at 3), because Biden and Mullaney "either reassigned [Plaintiffs to a different unit] or had their duties restricted inasmuch as each . . . Plaintiff[] was unable to work in excess of 37.5 hours per week." (D.I. 6 ¶ 28) ("Plaintiffs Durnan and Forbes were reassigned to duties of special investigators, while Plaintiff Christian continued, in a limited capacity, his duties as State Detective but was

---

[2]The parties agreed that "the statute of limitations under the FLSA was to be tolled, effective November 1, 2013." (D.I. 6 ¶ 21)

2

instructed that he could [neither] fly nor travel overnight and was not permitted to work in excess of 37.5 hours per week.") Finally, Plaintiffs allege that approximately within a year of being reassigned or having their duties restricted, Plaintiffs were either forced to retire or were terminated from their positions at DDOJ. (*See* D.I. 82 at 4)

Plaintiffs filed their Amended Complaint on June 17, 2014, alleging the following claims: a violation of the overtime provisions of the FLSA, 29 U.S.C. § 215(a)(2) (Count I); a violation of the all hours worked provisions of the FLSA, 29 U.S.C. §§ 207, 215(a)(2) (Count II); a violation of the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3) (Count III); and a violation of Procedural Due Process under 42 U.S.C. § 1983 (Count IV). (*See* D.I. 6 ¶¶ 41, 44, 50, 55) Defendants DDOJ and Mullaney filed their Motions on October 17, 2016. (*See* D.I. 67, 70) The parties completed briefing on DDOJ's and Mullaney's Motions on November 14, 2016 (*see* D.I. 68, 81, 84) and November 15, 2016 (*see* D.I. 72, 82, 86), respectively. The Court heard oral argument on both Motions on February 17, 2017. ("Tr.") The final pre-trial conference is scheduled for March 31, 2017 and a jury trial is scheduled to begin on April 10, 2017.

## II.  LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Defendants DDOJ and Mullaney each seek summary judgment on Plaintiffs' claims and have filed separate motions for summary judgment. (*See* D.I. 67, 70) The Court addresses each Motion in turn.

### A. DDOJ's Motion for Summary Judgment

#### 1. Eleventh Amendment Bars on Suit for Money Damages Against the State of Delaware and DDOJ

DDOJ seeks summary judgment that "Plaintiff[s'] suit against the State of Delaware and the DDOJ seeking monetary damages is barred by the Eleventh Amendment to the Constitution."[3] (D.I. 68 at 10)

In relevant part, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that a[] . . . State is immune from suits brought in federal courts by her own

---

[3]At oral argument, neither side disputed that "the Eleventh Amendment defenses apply equally to both" the State of Delaware and DDOJ, as the DDOJ is an arm of the State of Delaware. (Tr. at 39, 74) As such, the Court's conclusions with respect to the Eleventh Amendment defenses "apply equally" to both the State of Delaware and DDOJ. (*Id.* at 74)

5

citizens." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (same).

"Eleventh Amendment immunity is subject to three exceptions: 1) congressional abrogation, 2) state waiver [or consent], and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). To abrogate a state's Eleventh Amendment immunity, Congress must "mak[e] its intention unmistakably clear in the language of the statute," *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989) (internal quotation marks omitted), and must also "act[] pursuant to a valid grant of constitutional authority," *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks omitted). "If a statute has been passed pursuant to congressional power under § 5 of the Fourteenth Amendment to enforce the provisions of that amendment, Congress can abrogate a state's sovereign immunity." *MCI Telecomm.*, 271 F.3d at 503; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996) ("We [have] held that . . . § 5 of the Fourteenth Amendment allow[s] Congress to abrogate the immunity from suit guaranteed by th[e] [Eleventh] Amendment."). However, "Congress may not . . . abrogate state sovereign immunity when a statute is passed pursuant to its Article I powers, such as the Commerce Clause." *MCI Telecomm.*, 271 F.3d at 503; *see also Seminole Tribe of Fla.*, 517 U.S. at 72-73 (holding that Congress's Article I powers cannot be invoked to abrogate states' Eleventh Amendment immunity).

Citing much of this case law, DDOJ acknowledges that Congress may abrogate a State's Eleventh Amendment immunity. (*See* D.I. 68 at 11) However, DDOJ argues that Congress lacks the authority to do so here, as "[t]he FLSA was enacted pursuant to Congress' [C]ommerce

6

[Clause] power under Article I." (*Id.*) DDOJ further argues that the Eleventh Amendment also bars Plaintiffs' retaliation claims. (*See id.* at 13)

Plaintiffs respond that the Eleventh Amendment does not bar their FLSA claims because "DDOJ [and the State of Delaware] ha[ve] *de facto* consented to this litigation by actively defending it for over two-and-a-half years and [by] making a settlement offer." (D.I. 81 at 5) The Court disagrees.

Although "a state may waive sovereign immunity by consenting to suit . . . , [t]he waiver by the state must be voluntary." *MCI Telecomm.*, 271 F.3d at 503 (internal citation omitted). Thus, "[t]he state either must voluntarily invoke [the Court's] jurisdiction by bringing suit . . . or must make a clear declaration that it intends to submit itself to [the Court's] jurisdiction." *Id.* at 504 (internal quotation marks omitted). Neither has occurred here. Neither DDOJ nor the State of Delaware brought the instant case against Plaintiffs; nor does the record reflect that DDOJ or the State of Delaware "clear[ly] and unequivocal[ly]" stated it intended to submit itself to the Court's jurisdiction. *Skehan v. Bd. of Trs.*, 669 F.2d 142, 148 (3d Cir. 1982) ("[A]bsent a clear declaration of a state's consent to . . . suit against itself in federal court, such consent has not been inferred."). Therefore, DDOJ's and the State of Delaware's actions during the instant litigation have not amounted to a waiver of sovereign immunity.

Plaintiffs next contend that the FLSA's anti-retaliation provisions were enacted by Congress pursuant to § 5 of the Fourteenth Amendment (*see* D.I. 81 at 6-7) and that the FLSA "unequivocally express[es] its intent to" abrogate sovereign immunity (*id.* at 4) (noting that "suit[s] to enforce the FLSA 'may be maintained against any . . . public agency' including 'the government of a State' and 'any agency of a state'") (quoting 29 U.S.C. §§ 203(x), 216(b);

7

ellipses in original)). As such, in Plaintiffs' view, Congress abrogated states' Eleventh Amendment immunity through the FLSA's anti-retaliation provisions, and Plaintiffs' retaliation claims are not barred by sovereign immunity. (*See id.* at 7-8)

Again, the Court disagrees. While it is true that "the language of the FLSA satisfies the unequivocal-expression requirement, . . . [w]hether Congress invoked a permissible source of power to abrogate [Delaware's] constitutional immunity from suit is another matter." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 901 (6th Cir. 2014). "[R]espect for state sovereignty requires that courts should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 241 (3d Cir. 1998) (internal quotation marks omitted). "Examining the FLSA itself, there is no sufficiently strong logical connection between the aim of the [FLSA] – to increase the wages and shorten the hours of certain employees – and central, obvious Fourteenth Amendment concerns[:] . . . . remedy[ing] discrimination against a class of persons that Fourteenth Amendment jurisprudence has already identified as deserving special protection." *Wilson-Jones v. Caviness*, 99 F.3d 203, 210 (6th Cir. 1996); *see also Mich. Corr. Org.*, 774 F.3d at 902 ("In the absence of a past (or imminent future) violation of the Fourteenth Amendment, Congress has no remedial power under [§] 5 to authorize private lawsuits against the States. And in the absence of permissible [§] 5 legislation abrogating the State's immunity from suit, we lack jurisdiction to entertain these FLSA claims."). Hence, the FLSA's anti-retaliation provisions are insufficient to abrogate Eleventh Amendment immunity.

Finally, Plaintiffs argue that the Court should deny DDOJ's motion because Defendants "ask[] the Court to afford no remedy for the loss of [Plaintiffs'] FLSA rights" and, as such, a

8

ruling in Defendants' favor would be "inequitable." (D.I. 81 at 11) In support of their argument, Plaintiffs note that they "are time-barred from seeking an investigation with the [U.S.] Department of Labor," the agency that brings FLSA enforcement actions, "due to . . . protracted litigation [that] might have been challenged on the ground of sovereign immunity via [a] motion to dismiss years ago." (*Id.*) DDOJ interprets Plaintiffs' arguments as an "estoppel claim." (D.I. 84 at 9) In light of this, DDOJ points out that Defendants' Eleventh Amendment defense was *not* raised for the first time in DDOJ's motion for summary judgment but, instead, was first raised in Defendants' Answer to Plaintiffs' Amended Complaint. (*See* D.I. 7 ¶ 59) Moreover, DDOJ correctly argues that estoppel does not apply with respect to sovereign immunity defenses, even if such defenses are raised for the first time in a motion for summary judgment (or even after trial). *See Edelman*, 415 U.S. at 678 ("[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."). Thus, neither the State of Delaware nor the DDOJ is estopped from asserting its Eleventh Amendment defenses at this stage of the litigation.

Accordingly, the Court will grant DDOJ's motion.[4]

### 2. Injunctive Relief

DDOJ argues that the Court should grant summary judgment that Plaintiffs' private suit for injunctive relief is barred by the FLSA. (*See* D.I. 68 at 13) DDOJ notes that "[t]he FLSA itself does not provide a private right of action for injunctive relief for violations of the FLSA's wage and hour provisions" but "only authorizes such actions to be brought by the U.S.

---

[4]For clarity, throughout this opinion when the Court states that it will grant or deny a "motion," the statement is limited to the particular portion of the motion being discussed in the particular section of the opinion.

Department of Labor." (*Id.*) At oral argument, Plaintiffs admitted that "[i]njunctive relief is not available" and added that they were not seeking injunctive relief at this time. (Tr. at 39)

Accordingly, the Court will grant DDOJ's motion.

### 3. Prospective Declaratory Relief

DDOJ asks the Court to grant summary judgment that "the Eleventh Amendment bar[s] . . . [P]laintiffs' claims for prospective declaratory relief" against DDOJ. (D.I. 68 at 14) In support, DDOJ contends that Plaintiffs' declaratory judgment action is moot, as Christian and Forbes retired and Durnan was placed on "terminal [a]dministrative [l]eave" before the Amended Complaint was filed. (*Id.* at 15)

Plaintiffs counter that, "but for the DDOJ's [allegedly] retaliatory actions, [Plaintiffs] would have remained in their positions as State Detectives and would therefore have been eligible to accrue overtime and seek declaratory relief." (D.I. 81 at 8) According to Plaintiffs, "[t]here are genuine issues of material fact regarding the [allegedly] retaliatory act[s] of . . . DDOJ and Mr. Mullaney and the motivation for [Plaintiffs'] retirements." (*Id.*)

The Court agrees with Defendants. As Defendants stated at oral argument, "there is no evidence in the record that would support [Plaintiffs'] allegation that the [DDOJ] is breaching the FLSA on an ongoing basis." (Tr. at 12) Moreover, since all three Plaintiffs retired before the Amended Complaint was filed, Plaintiffs' request for prospective relief was "moot at the time the Amended Complaint was filed." (*Id.* at 13) It is also undisputed that Plaintiffs are not currently employed by the State of Delaware. (*See id.* at 14) Therefore, there is no genuine dispute of material fact that Plaintiffs' request for prospective declaratory relief is moot.

Plaintiffs oppose this conclusion, arguing that the Court should permit an action for

10

declaratory judgment under *Ex Parte Young*. (*See* D.I. 81 at 8; *see also Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002) ("[A] person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under . . . *Ex [P]arte Young*.")) To that end, Plaintiffs "seek permission" to amend their complaint to assert an *Ex Parte Young* action against Mullaney in his official capacity. (D.I. 81 at 9) In its reply brief, DDOJ responds that allowing an *Ex Parte Young* action "could result in an award of . . . monetary damages." (D.I. 84 at 8) Such an outcome, according to DDOJ, would be "an end run around the . . . Supreme Court's Eleventh Amendment jurisprudence." (*Id.* (internal quotation marks omitted); *see also Green v. Mansour*, 474 U.S. 64, 73 (1985) ("[A] declaratory judgment is not available when the result would be a[n] . . . 'end run' [around Eleventh Amendment jurisprudence].""))

At oral argument, Plaintiffs admitted that "damages [would] flow" from their request for prospective declaratory relief. (Tr. at 40) Plaintiffs further stated that they would obtain "a large amount in monetary damages" if the Court were to award prospective declaratory relief. (*Id.*) As such, Plaintiffs' request "would be little different than a . . . direct federal court award of money damages against" the State of Delaware and would also amount to "an impermissible end run around [the Supreme Court's] Eleventh Amendment jurisprudence." *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997). Since a declaratory judgment is not available where, as here, declaratory relief would result in monetary damages against a state, the Court finds that an amendment to assert an *Ex Parte Young* action would be futile. *See generally Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. 'Futility' means that the complaint, as amended, would [still] fail to state a claim upon which relief could be granted.") (internal

11


quotation marks and citations omitted); *see also Mills*, 118 F.3d at 55 (denying amendment as futile because there were "no ongoing legal violation[s]" and amendment would have constituted "an end run around Eleventh Amendment jurisprudence"). Thus, the Court will not grant leave to amend the complaint to add an *Ex Parte Young* action against Mullaney.

Accordingly, the Court will grant DDOJ's motion.

### B. Mullaney's Motion for Summary Judgment

#### 1. FLSA Retaliation

Mullaney requests that the Court grant summary judgment that "Plaintiffs have not [adequately] pled a claim of retaliation against Defendant Mullaney in his individual capacity" (D.I. 72 at 5), since Count III of the Amended Complaint is re-alleged and incorporated only against "Defendant Delaware Department of Justice" (D.I. 6 ¶ 47). By comparison, Count IV of the Amended Complaint "clearly state[s] a violation of due process against" Mullaney. (D.I. 72 at 5) In Mullaney's view, this distinction between Counts III and IV creates a presumption that Plaintiffs "intended to bring a[n] [FLSA retaliation] claim only against the [DDOJ] . . . and not against . . . Mullaney." (*Id.*)

Plaintiffs respond that "[Mullaney's] argument . . . fails under a plain reading of the FLSA." (D.I. 82 at 6) Specifically, Plaintiffs argue that because the "FLSA . . . contemplate[s] individual liability under the term 'employer,'" Count III is adequately alleged against Mullaney. (*Id.*) (internal quotation marks omitted) Plaintiffs further point out that the Amended Complaint's caption includes Mullaney "in his individual capacity" (D.I. 6 at 1) and that "Count III of the Amended Complaint . . . clearly indicates actions taken by . . . Mullaney" (D.I. 82 at 6 (internal citation omitted); *see also* D.I. 6 ¶¶ 48-49).

The Court agrees with Mullaney. Count III "realleges and incorporates [prior allegations] against Defendant Delaware Department of Justice," but not against Mullaney. (D.I. 6 ¶ 47) By contrast, Count IV is expressly brought against "Defendants Biden and Mullaney." (*Id.* at 8) As Mullaney observes, "[t]his demonstrates that when a Count is alleged against Mullaney in his individual capacity, . . . Plaintiffs employ a different terminology." (D.I. 86 at 4)

At oral argument, Plaintiffs not only explained their disagreement with this analysis, but also requested leave to amend to add Mullaney as a defendant in Count III. (*See* Tr. at 48) Defendants oppose the amendment based on Plaintiffs' undue delay.[5] (*See id.* at 17, 71; *see also Shane*, 213 F.3d at 115 ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.")) Defendants explain that Plaintiffs' allegation that Mullaney was an employer under the FLSA (*see* D.I. 82 at 6) was not addressed during discovery, so Plaintiffs' proposed amendment could "require the discovery period [to] be reopened." (Tr. at 17-18) Plaintiffs countered that Defendants "should have been on notice of" the fact that the FLSA contemplates individual liability. (*Id.* at 49)

The Court will not grant Plaintiffs' untimely request for leave to amend. While the statute may have put Defendants on notice that an individual such as Mullaney might, in particular circumstances, be found liable under the FLSA, it was Plaintiff's obligation in the Amended Complaint to put Mullaney on notice of what allegations he was defending against in

---

[5]During oral argument, Defendants also argued that Plaintiffs' amendment would be futile because, even if the Court were to grant leave to amend in this instance, qualified immunity would shield Mullaney from any claims for damages. (*See* Tr. at 29) As explained below, the Court will deny Plaintiffs' request for leave to amend because allowing Plaintiffs' amendment at this stage would cause undue delay and prejudice. Given this conclusion, the Court does not reach the question of whether Plaintiffs' amendment would be futile.

this particular case. The Amended Complaint cannot be read as providing Mullaney the requisite notice that these Plaintiffs are contending he is individually liable to them under the FLSA in this specific case. Therefore, Defendants "ha[d] no incentive to develop a record on whether . . . Mullaney was an employer for purposes of [the] FLSA" (Tr. at 49) and it is too late to require them to do so now. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("[D]elay alone is an insufficient ground to deny leave to amend. . . . However, at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.") (internal quotation marks and citation omitted); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (stating that plaintiff's delay in amending her complaint was unreasonable because "[the] proposed amendment was requested three years after the action was filed" and "[m]ost of the facts were available to plaintiff . . . before she filed her original complaint").

Accordingly, the Court will grant Mullaney's motion.[6]

### 2. Due Process

Mullaney additional seeks summary judgment on the ground that "Plaintiffs cannot establish that . . . Mullaney violated their due process [rights] in reassigning two of them to duties outside the . . . extraditions unit." (D.I. 72 at 16) (internal quotation marks omitted)

---

[6]Mullaney also seeks summary judgment that Plaintiffs cannot establish a prima facie case of FLSA retaliation (*see* D.I. 72 at 6-11); that Plaintiffs cannot establish that Mullaney's proffered reason for his actions is pretextual (*see id.* at 12-13); and that Mullaney is entitled to qualified immunity on his FLSA claims (*see id.* at 14-15). The Court does not reach these issues, given its conclusion that Count III fails to adequately allege an FLSA retaliation claim against Mullaney. (*See* Tr. at 19, 50) (parties acknowledging these disputes would be moot if Court were to agree with Defendants on inadequacy of pleading in Count III)

In order to prevail on a claim for a violation of Procedural Due Process, Plaintiffs need to show, by a preponderance of the evidence, (1) deprivation by state action of a constitutionally protected interest in life, liberty, or property, (2) without due process of law. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Kaminski v. Twp. of Toms River*, 595 F. App'x 122, 125 (3d Cir. Dec. 23, 2014). "State law creates the property rights protected by" Procedural Due Process. *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997). Under Delaware law, "[p]roperty interests may be created by state or federal statute, municipal ordinance, or by an express or implied contract." *Bowers v. City of Wilmington*, 723 F. Supp. 2d 700, 706 (D. Del. 2010).

Acknowledging that the "parameters" of Plaintiffs' due process protections are "shaped by Delaware law," Mullaney argues that "the scope of [Plaintiffs'] property interest is defined by the tenure provisions of" § 2511(a) of the Delaware Code. (D.I. 72 at 16) In pertinent part, § 2511(a) provides:

> Any attorney or other employee regularly employed by the Department of Justice to render services shall be appointed by the Attorney General to serve at the Attorney General's pleasure. After 3 years full-time service the employee shall have attained tenure and shall continue to be regularly employed during efficient and good behavior and shall not be removed because of religious or political opinions or affiliations or except for due cause, after a hearing before a court consisting of 3 judges of the Superior Court of the State.

Del. Code Ann. tit. 29, § 2511(a) (2016).

Based on § 2511(a)'s provisions and Plaintiffs' tenure with DDOJ, Mullaney acknowledges that "Plaintiffs had a property interest in their employment." (D.I. 72 at 16) However, Mullaney argues that Plaintiffs did not have "a property interest in the specific job

15

duties they were to perform," because they "serve[d] at the Attorney General's pleasure," and were required to "perform [their] duties anywhere, both within and without the State, under the direction of the Attorney General." (D.I. 72 at 16-17) (citing § 2513(a))

A plaintiff "alleging a property interest in a benefit protected by due process must go beyond showing an unsubstantiated expectation of the benefit." *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1256 (3d Cir. 1994) (internal quotation marks omitted). "In determining whether a given benefits regime creates a property interest protected by the Due Process Clause, we look to the [legal criteria] governing the . . . benefit." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005). "Where those [criteria] meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist." *Id.* (internal quotation marks omitted); *see also Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion.").

Here, the statutory provisions governing State Detectives' duties and responsibilities provide that State Detectives "serve at the Attorney General's pleasure," § 2511(a), and under the Attorney General's "direction," § 2513(a). Because these provisions do not provide any legal criteria that would "substantive[ly] limit[] . . . official discretion," these provisions fail to confer on Plaintiffs a protected property interest in any specific job duties. *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (internal quotation marks omitted). Plaintiffs Due Process Claim, therefore, fails.[7]

---

[7]This conclusion is not altered by the CBA, on which Plaintiffs also rely. (*See* D.I. 82 at 13) The CBA does not supersede Delaware law. In pertinent part, the CBA provides that "if any part of this Agreement is in conflict with mandatory Federal or State laws, . . . such part shall be suspended and the appropriate mandatory provision shall prevail." (D.I. 82-1 at B20)

16

Accordingly, the Court will grant Mullaney's motion.

### 3. Damages

Mullaney seeks summary judgment that Plaintiffs' claims for damages are "limited by the [voluntary] retirements of each of the three Plaintiffs." (D.I. 72 at 18) As alleged in Plaintiffs' Amended Complaint, Plaintiffs' claims against Mullaney arise solely from Mullaney's Procedural Due Process violations. (*See* D.I. 6 at 8) Since the Court has already concluded that Mullaney is entitled to summary judgment on Plaintiffs' Procedural Due Process claim, it follows that Plaintiffs' cannot recover damages.

Accordingly, the Court will grant Mullaney's motion.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant DDOJ's and Mullaney's motions for summary judgment. An appropriate Order follows.